Good morning. May it please the Court, my name is Suzanne Lee Elliott and I'm here representing Mr. Pletcher. I'd like to reserve three minutes for rebuttal on this matter. May it please the Court and Counsel, Mr. Pletcher is before this Court on a grant of a certificate of appealability on the issue of whether or not his trial counsel provided him with effective assistance. Mr. Pletcher was represented at trial and on a direct appeal by counsel. He filed a 28 U.S.C. 2255 motion pro se. The magistrate judge in the Western District denied that motion and then this Court appointed me to brief the issues before this Court. I know the Court's reviewed the procedural history and the excerpt of the record, so I'll move on and concentrate my argument on why this case must be returned to the district court. And that is because under 28 U.S.C. 2255, the district court shall grant an evidentiary hearing unless the district court records conclusively show that the prisoner is entitled to no relief. The magistrate judge here erred by failing to grant Mr. Pletcher the required evidentiary hearing because his pleadings in that court, his pro se pleadings in that court, did demonstrate that the facts that he alleged, if true, would entitle him to relief. The primary argument on which Mr. Pletcher is entitled to relief is that regarding the admission of his inculpatory statements to the FBI agents at the time that they came to his parents' house outside of Chicago and questioned him regarding the four letters that form the basis of the extortion charges here. The argument was made prior to trial that Mr. Pletcher's statements were made after he was in custody, but before he was informed of his Miranda rights. But at that evidentiary hearing, the only witnesses called were those presented by the government, two FBI agents in particular, who talked about the facts and circumstances of that questioning. Despite the fact that the test, the legal test, focuses on how a reasonable man in the suspect's position would have understood his situation in regard to the police, Mr. Pletcher was not called. Mr. Pletcher then alleged in his 2255 motion that his trial attorney, his performance was deficient because, one, he failed to call Mr. Pletcher himself to discuss his perception of the events, as well as other family members who were present at the time the FBI arrived at the house and, in fact, who were also questioned. In his pleadings to the district court, Mr. Pletcher included affidavits from his family members. He also wrote the pleadings himself. And I will agree that his affidavit, an affidavit specifically on the question of how he felt, was not submitted. However, I think given a broad reading of the, all of the materials that he submitted, it's clear that Mr. Pletcher alleges that under the five-part test, he did not feel free to leave. On the basis of that broad reading of his pleadings, the affidavit submitted by his family members, and the If Mr. Pletcher's version of the events is true, then the trial court did err by admitting Mr. Pletcher's statements, and it was deficient performance. Which statement? The statement, well, actually, both. Two, and that's It's our argument that the post-Miranda statements were simply fruit of the prior un-Mirandaized in-custody statement, where the officers displayed the letters and said, did you write these, or were these the only ones you wrote, I believe, was the question, and he said, yes, only those. After that admission, then, he was advised of his Miranda warnings, and then he gave a fully inculpatory statement regarding them. Is there anything about that second statement that was suggested to be coerced or involuntary? Mr. Pletcher argues in his pleadings that he was confronted with He doesn't argue that he wasn't informed of his Miranda warnings. He argues that the atmosphere created by the FBI agents, the SWAT team, and his position in the home at that time were coercive. I think that the reasonable argument is that they were they should be suppressed because they were simply tainted by the prior admission made without the Miranda warnings, and that is, I think, the logical analysis of that statement. Well, is it so automatic? I mean, except the proposition that the first statement, for the purpose of this discussion, the first statement, plainly before any Miranda warnings, a dispute as to whether or not he was in custody, except the proposition he was in custody. So that statement is ruled out. Does that automatically mean everything that comes after that, after he has been properly advised of his rights, is automatically untouchable because it's been tainted by the first one? Well, I've been practicing for 18 years, Your Honor, so I know nothing's automatic. However, under the reasoning of Oregon v. Elstad, it's our argument that the following statements are similar to the facts in that particular case and suffer the same taint. So Mr. Pletcher also argued in his 2255 that his trial counsel was ineffective for failing to present evidence regarding his mental ability to form the requisite intent to exclude. I'll interrupt you there. I want to make sure I understand your position on the first issue. Yes. It appears to be your argument that because Miranda was not followed, because during the first statement he was never told of his Miranda rights until he made an inculpatory statement, that that should be excluded or should have been excluded on that basis. In addition, you're arguing that it was involuntary because there was coercion. Is that correct? Those are Mr. Pletcher's arguments. That's correct. So it could have been – your argument would be that it could have been excluded first because he was in custody in view of all the facts. Yes. Whether there was coercion or not. That's correct. You then argue that there was coercion. Yes. There being coercion as to the first statement, that tainted the following statement, which was written then where he waived his rights. And far more detailed. Pardon me? And far more detailed inculpatory statement. And thus far more – meets the second prong of Strickland in a far more pervasive way in that it was prejudicial to the ultimate question before the jury. Because, of course, Mr. Pletcher – and the government clearly agrees with this – Mr. Pletcher's argument at trial was, yes, I wrote the letters, but I didn't have the requisite intent to extort. Which gets to the second issue I'm not going to spend a lot of time on. Mr. Pletcher did also argue to the magistrate judge that his attorney failed to appreciate that this mental intent was an element of the crime, and thus did not present evidence regarding his mental state. He does present – did present affidavits to the magistrate judge which, by his father, who does have some medical background, that he suffers from a mental disease or defect that would interfere with that ability. We also believe that the magistrate judge should have granted him an evidentiary hearing on that second issue. I'll save whatever remaining time I have for rebuttal. Thank you. Good morning, Your Honors. My name is William H. Redkey, Jr., and I represent the United States today. We are going to ask the Court today to find that the district court did not abuse its discretion in denying an evidentiary hearing to the defendant in this case on his 2255 motion, and to find that, in sum, that the defendant received effective representation and a fair trial, and that his appeal here should be denied. First of all, the law is pretty clear that a defendant is not entitled to an evidentiary hearing if the record shows, as in this case, that there is no merit to the substantive errors claimed in his motion. And this is true even as here, where there was evidence submitted outside the trial record as a part of the 2255 motion. Now, in this case, the district court assumed the truth, the defendant's outside evidence, and still found the claimed errors were not errors at all, and that there was no prejudice to the defendant. That finding was correct. What I'd like to do now is, as counsel did, address some of the substantive issues in turn. At the end of her presentation, she talked about the diminished capacity issue. And I think in this context, that is where the Court is trying to decide, did the trial court correctly deny a request for an evidentiary hearing? It's important to remember that the defendant, at that stage of the game, has an obligation to present some sort of proffer of evidence to the court, and to, at this stage, we look at it and say, what was that proffer? What was the district court, what did the district court have before it when it was required to make its decision on this evidentiary hearing? Now, even considering the outside evidence, the district court in this case decided that the defendant had simply failed to produce a proffer of sufficient evidence to carry his strickland burden. Now, the defendant in this case, and I think his exact words were, it was believed, and I add the emphasis, that Fletcher likely, and I add the emphasis, suffered from cyclothymia or bipolar disorder. He never really fully defined cyclothymia disorder, or cyclothymia or bipolar disorder. And he never really cited any cases to the effect that either one of those mental diseases or defect constitutes a diminished capacity under the law. But I want to turn first to what he showed, what he did show in support of that argument, and to show that it was deficient. He offered to the district court only the father's affidavit that he had had a conversation with Karen Lake, whose credentials are described only as the assistant director of the Lake County Mental Health Department. We have no indication whether Karen Lake is a trained mental health professional, a psychiatrist, psychologist, or what her expert credentials are. But according to the father's affidavit, Miss Lake said that the defendant showed some of the characteristics of those two disorders. But she based her opinion only on casual observations and hearsay from the parents. And in seeking that evidentiary hearing before the district court, Mr. Pleasure neither offered nor promised the district court a shred of evidence from a mental health expert, someone who would be qualified to testify at trial, who examined him and said that he suffered from that mental disease or either defect. And he neither offered nor promised to the district court any scientifically informed evidence to psychiatrist, and I think the assistant director of the psychiatry department at the University of Washington, that he elicited, quote, no sign of personality disorder or psychopathology. The district court, in other words, had before it the affidavit of the father, who relied on the untrained observations of Karen Lake, on the one hand, and the statement of Dr. Wise on the other, that the defendant was not suffering from any serious personality disorder or psychopathology. Now, I think it was fair for the district court at that point to conclude that if the defendant had such evidence, if there had been somebody who examined him that had found him to have one of these defects or any other defect that might have constituted the defense of diminished capacity, that he would have produced that. But he did not produce any evidence to the district court. And that's what the district court had in front of him. And because he did not produce. Yes, sir. Does the record show that the attorney, trial attorney, was aware of these defects or illnesses and investigated them and concluded that they were insufficient and showed diminished capacity? No. I should say yes. Isn't that the point that's being raised in this appeal, that a competent attorney with those clues, with that information, would have done so? Yes. To answer your question, yes, there is evidence in the record that the attorney knew. Dana Pletcher, the father of the defendant, filed an affidavit in support of the 2255 motion in which he referred to Ms. Lake and did say that we brought this up with Mr. Palmer, the defense attorney. And so Mr. Palmer, the defense attorney, was aware of the red flag. But the defense attorney at that point, according to the affidavit, said that diminished capacity was not a defense to the crime of extortion. And the crime here, of course, included not only the threatening letters to Bill Gates, but the intent to extort the $5 million from him. And that was the element in the issue at trial. So, yes, the defense attorney did know that Karen Lake had noticed these characteristics, but the defense attorney did not pursue that. And that is very clear. But in answer to your question, Your Honor, should the defense attorney have followed up on that? I think that's a matter of conjecture, maybe yes, maybe no, under the circumstances. But the issue here, really, before the Court, and the standard on an ineffective assistance of counsel claim is not whether the attorney could have or should have done something different, but whether his performance measured up to a reasonable standard of performance. But wouldn't an evidentiary hearing answer that question? Well, it's hard to tell, since there was no evidentiary hearing. But I think that it is important to conclude that because Dr. Wise had already examined the defendant, because the defendant had mentioned that there were two other people who had examined them but never proffered anything to the court at all about what those people said, it was fair for the court to conclude, the district court to conclude, that there was insufficient showing to justify or warrant an evidentiary hearing. But that even if, even if there had been evidence of mental disease or defect, that with the testimony of Dr. Wise, it simply is not ineffective assistance of counsel to elect not to pursue that defense. Did that answer your question, Your Honor? We'll see. With the time remaining, I'd like to move on to the oral and written statements very briefly. The defendant, of course, argues that, and I think you characterized it correctly, Your Honor, that with respect to the oral statements, that he was in custody and that the statements were coerced. On the question of whether he was in custody, of course, the test is whether an ordinary, reasonable, innocent person would have felt that he was not free to go. And I know the Court is aware of the facts, but I want to cover them very briefly. The defendant admitted the two FBI agents to his residence. The interview took place in the defendant's wing of the house, in familiar territory. Since they had a search warrant, there wasn't much he could do about keeping him out of the house. No, no. All right. But he was there at the house and admitted them in. And the agents were directed not to arrest the defendant unless or until a probable cause was established. The defendant was told he was not under arrest. The defendant and the agents advised him of his Miranda warnings 10 minutes after he verbally confessed. And he was not actually placed under arrest until even after the search was completed. There was first the oral statement and the written statement, and then the search was conducted. And he even roamed around the house assisting the agents in doing the computer forensic analysis. It was only after that that he was arrested. Notwithstanding that, he claims that he was in custody. And I think the only other evidence to refute the government's position on this, aside from his own belief, was the parents who said, well, we didn't feel we were free to go. And his sister. And his sister. It's the same thing. Yes. But it's important to remember here, too, that the defendant was in the private wing of his house with two FBI agents. He had no way of knowing what the family was thinking. And it's important. He's facing the same different agents, but the same phenomenon of agents arriving fairly early in the day. Yes. And conducting a search, at least as to that. You do the distinction before with regard to the diminished capacity defense, saying the proffer was was insufficient to justify a jury hearing. At least on this issue, there is more specific evidence being offered up in the form of those declarations to suggest there was an atmosphere which someone could have understood to be one there is not permitted to leave. To be sure. But I think, although I don't have much time left here, but I think that the evidence is very clear that when a defendant is advised that he is free to go, he's being interviewed in his own home in a non-hostile environment, and, in fact, was free to go, that it simply was not ineffective for counsel to not raise these issues through witnesses at the suppression hearing. Let's assume that one of us or two of us disagree with you on that and conclude that the first statement violated Miranda. Would that invalidate the second statement? And was there prejudice, assuming that it invalidated the second state? The answer is no, it would not invalidate the second statement, the written statement. And Elstad is the case that establishes that rule. And although the word taint was used in the earlier argument, taint is a word that Elstad said was not appropriate in this analysis. The question is whether the second statement was voluntary. And I think a lot of the same facts bear on that question as bear on the oral statement. And we would argue that there was simply no coercion involved there. And, in fact, if I could conclude with a quotation from the defendant himself, he was asked, in essence, now, the agents didn't coerce, browbeat, torture you, or otherwise overcome your will to resist, did they? I asked him that question on cross-examination. And he said, I cooperated because I thought it was the right thing to do, yes. And I don't see how a district court faced with that, or stepping one step back, how counsel, knowing that, could have argued in the district court on the 2255 motion that the statements were coerced in any respect. So we would argue that all the statements should come in, the oral and the written, as well. And I would conclude here. It looks like I'm really over my time, and I apologize, that we urge this Court to find that the district court correctly ruled that the defendant failed to show that an evidentiary hearing was warranted, or that he could have overcome the presumption that this Court allows that counsel's performance was, in fact, objectively reasonable both at trial and during the suppression hearing, or that if defense counsel was in any way deficient, that he was not prejudiced, the defendant was not prejudiced by his performance. Thank you. Roberts. I won't take too much of the Court's time. I would just like to point out where I reiterate clearly for the Court where I believe the district court magistrate here went wrong. At the excerpt of the record on page 123, the district court said, Although Petitioner supplies affidavits by his father, sister and mother, all who recount FBI, that the FBI impressed on them that they were not free to leave until they answered the agent's questions, these affidavits do not bear directly on the question of whether Petitioner himself felt free to leave. In fact, the record does contain the Petitioner's statements regarding that very issue. He supported his assertions in his memorandum by stating and signing that he was confronted with at least ten armed FBI agents, along with a plethora of agents cordoning off a large radius and employing a command center some blocks from his home, and then goes on to explain what the agents confronted him with in terms of evidence. And that's at the excerpt of the record at page 8. The error here was the very fact that the trial counsel didn't call Mr. Pletcher at that pretrial suppression hearing because the very issue there was how Mr. Pletcher perceived those facts. And so on that basis, not only was counsel's performance deficient, there is a substantial probability that the admission of those statements prejudiced Mr. Pletcher's right to a fair trial. Kennedy. For me, the harder question is really the leap to the second statement. And I think you can make a pretty good argument with regard to submitting evidence to raise a question about whether he felt he was in custody or not. At least there's some concern based on the other members of his family. But then you get to the second half of it under Elstead in terms of whether the second statement is inherently, it has to be excluded because it's not voluntary. And you just heard the Q&A offered by Mr. Redke with regard to what Mr. Pletcher said about that. Can we make a determination that the second statement was involuntary and needs to be excluded? I don't think so for two reasons. One is that, as I agree with Mr. Redke, some of the considerations as to the second statement are the same as those to the first. And Mr. Pletcher's never had, point of argument, he's never had a full evidentiary hearing to explore those issues. Number two, I think it's difficult to take what Mr. Pletcher said in front of the jury after the statements had been admitted by the Court and found not to be coerced and look at that with hindsight as to what the evidence would have been at the suppression hearing had Mr. Pletcher testified. So on that basis, I think the matter should be returned to the district court for a full evidentiary hearing on this issue. Thank you. Roberts.
judges: Browning, Alarcon, Clifton